UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
MIDDLE DIVISION

| | |
|---|---|
| **STEVEN ALLAN FIKE**; <br> **ANDREA RAIFORD DOXTATOR**; <br> *individually and as mother* <br> *and next friend of April Gowen, a minor;* <br> and **JERRY WESTBROOK**, <br> *Administrator of the estate of* <br> *Billie Nadine Bigham* <br><br> Plaintiffs, <br><br> v. <br><br> **JOHN EARL PEACE**; <br> **D.G. TRUCKING COMPANY**; *and* <br> **GENERAL SHALE CORPORATION**, <br><br> Defendants. | Civil Action No.: 4:03-CV-02783-RBP |

**MEMORANDUM OPINION**

This cause comes on to be heard upon Defendant General Shale Corporation's ("General Shale") Motion for Summary Judgment, originally filed on October 14, 2005, and renewed on January 23, 2007.

**FACTS[1] AND PROCEDURAL HISTORY**

On July 14, 2003, Steven Allan Fike ("Fike"), Billie Nadine Bigham ("Bigham"), Andrea Raiford Doxtator ("Doxtator"), April Gowen ("Gowen") – Doxtator's minor daughter – and two other minor children of Doxtator, not party to this suit, were riding in a 1997 Ford pickup truck on Alabama State Highway 35 in Cherokee County, Alabama. As traffic began

---

[1] The court notes where "facts" appear disputed.

backing up because of a slow vehicle, Fike, the driver of the truck, pulled into the left hand lane to pass. A tractor-trailer being driven by John Earl Peace ("Peace") pulled into the left lane at about the same time, behind the truck being driven by Fike. The brakes on the tractor-trailer failed to function properly, and the tractor-trailer began to pick up speed. Noticing that the tractor-trailer appeared to be out of control, Fike pulled his truck as far left off of the road as he could. Peace, not wanting to run his tractor-trailer off the road, attempted to squeeze through the gap made by Fike on the far left and the lane of slowed traffic on the right. The tractor-trailer's load was oversized, and Peace was unable to navigate the gap. The load struck Fike's truck on the right side, instantly killing Bigham, and injuring Gowen, Doxtator, and Fike, as well as destroying the pickup truck.

General Shale is in the business of manufacturing brick. In the summer of 2003, General Shale hired Defendant D.G. Trucking to haul equipment from the General Shale plant in Kentucky to its new plant in Georgia. The cargo in question was large steel kiln cars used in the manufacture of brick. Due to the size of the kiln cars, they are considered to be an oversized load. General Shale, though a licensed motor carrier, generally does not haul oversized loads.  D.G. Trucking is a licensed motor carrier that specializes in hauling such loads. General Shale has had a fifteen year relationship with D.G. Trucking, using them to haul oversize loads when necessary. There is no evidence that General Shale has ever had any problem with D.G. Trucking and its methods, safety history, or its observation of legal requirements for a commercial motor carrier. At the time of the Fike accident, Peace was driving a D.G. Trucking tractor trailer loaded with General Shale's kiln cars. After the accident, an inspection of the tractor trailer by the Alabama State Troopers revealed several violations of the federal safety regulations applicable to motor

carriers, including brakes that were out of adjustment.

On August 28, 2003, Fike, Bigham, Doxtator, and Doxtator as next friend of Gowen, filed suit against Peace, D.G. Trucking, and General Shale in the Circuit Court of Dekalb County, Alabama.[2]  In Count I of the Complaint, titled "Negligence, or Willful and Wanton Misconduct," Plaintiffs allege that Peace negligently, or willfully and wantonly, operated a tractor trailer that was overloaded, without the required escort of a pilot vehicle, and attempted to navigate down the middle of the road, instead of risking injury to himself by pulling his own truck off the road. Plaintiffs further allege that D.G. Trucking negligently, or willfully and wantonly, entrusted the tractor trailer into the hands of Peace in a defective and substandard condition - not having been properly inspected and maintained. Plaintiffs also allege that both D.G. Trucking and General Shale were negligent or willful and wanton when they contracted with each other to haul the oversized load, that D.G. Trucking was negligent or willful and wanton in allowing Peace to drive an overloaded tractor trailer, and that General Shale breached its duty to operate in a safe manner when it "accepted without objection" goods that had been unsafely transported by D.G. Trucking.

In Count II of the Complaint, titled "Wrongful Death," Plaintiffs allege that the Defendants' behavior resulted in the death of Billie Nadine Bigham. Fike, as administrator of the estate of Bigham, his mother, claims to bring the action pursuant to Alabama Code § 6-5-410 (1975). Plaintiffs demand money damages in an amount to be determined by a jury. On October 9, 2003, Defendants removed this action to the United States District Court for the

---

[2] This court has approved a settlement of the claims against D.G. Trucking Company and Peace.

Northern District of Alabama, Middle Division, based on diversity jurisdiction under 28 U.S.C. § 1332. On June 29, 2006, this court found that General Shale was entitled to judgment as a matter of law on some claims, but withheld ruling on the claims for relief based on vicarious liability, electing to certify the following questions to the Supreme Court of Alabama:

(1) Under Alabama law does the mere contracting for the hauling of an oversize load make the shipper vicariously liable for the negligence of the independent contractor trucking company?

(2) If there is some general liability for negligence of an independent contractor merely because of the oversize load, does the liability of the shipper extend to causes unrelated to the oversize load per se, such as improper brakes or driving?

On January 16, 2007, the Supreme Court of Alabama unanimously answered the first question in the negative,[3] obviating the need to articulate a response to the second question.[4] General Shale renewed its Motion for Summary Judgment on January 23, 2007. As subsequently agreed to by the parties and memorialized in this court's order of February 26, 2007, the only remaining claims against Defendant are negligent hiring and/or entrustment. These claims have been fully briefed, and the renewed Motion for Summary Judgment is under submission.

---

[3] The Supreme Court of Alabama specifically found that "[u]nder the facts presented to us by the district court, we conclude that General Shale did not owe a nondelegable duty to the third parties injured as a result of D.G. Trucking's negligence. We also observe that the hauling of the kiln cars did not constitute an inherently dangerous activity. Therefore, we find no basis upon which to impose vicarious liability upon General Shale for the alleged negligence of D.G. Trucking. For these reasons, we answer the first certified question in the negative."

[4] The Supreme Court of Alabama's judgment was deemed final on March 19, 2007, upon that court's overruling the application for rehearing.

## SUMMARY JUDGMENT STANDARD

Summary judgment may be granted based upon facts developed through pleadings, discovery, and supplemental affidavits, etc., if together, they show that there is no genuine issue as to any material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party moving for summary judgment bears the initial burden of explaining the basis of his motion. *Celotex*, 477 U.S. at 323. "It is never enough [for the movant] simply to state that the non-moving party could not meet their burden at trial." *Mullins v. Crowell*, 228 F.3d 1305, 1313 (11th Cir. 2000) (quotation omitted). The non-moving party then bears the burden of pointing to specific facts demonstrating that there is a genuine issue of fact for trial. *Celotex*, 477 U.S. at 324. The non-moving party "must either point to evidence in the record or present additional evidence 'sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.'" *Hammer v. Slater*, 20 F.3d 1137, 1141 (11th Cir. 1994) (quotation omitted). Summary judgment is required where the non-moving party merely repeats its conclusory allegations, unsupported by evidence showing an issue for trial. *Comer v. City of Palm Bay,* 265 F.3d 1186, 1192 (11th Cir. 2001) (citation omitted).

Summary judgment will not be granted until a reasonable time has been allowed for discovery. *Comer*, 265 F.3d at 1192. Moreover, "[w]hen deciding whether summary judgment is appropriate, all evidence and reasonable factual inferences drawn therefrom are reviewed in a light most favorable to the non-moving party." *Korman v. HBC Florida, Inc.*, 182 F.3d 1291, 1293 (11th Cir. 1999). Finally, the trial court must resolve all reasonable doubts in favor of the

non-moving party, although it need not resolve all doubts in a similar fashion. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1080 (11th Cir. 1990).

## ARGUMENTS[5]

I.   General Shale's Renewed Motion.

General Shale's position is that this court dismissed all claims, save for those regarding vicarious liability, in its Memorandum Opinion and order of June 29, 2006, electing to certify specific questions on those issues to the Supreme Court of Alabama.[6] As a consequence of that court's determination that General Shale is not vicariously liable for D.G. Trucking's alleged negligence, General Shale submits that summary judgment is due to be granted as to all remaining claims for relief.[7]

   A.   Plaintiffs' claims have no basis in Alabama law.

General Shale argues that Plaintiffs' claims have no basis in Alabama law, citing the general rule set forth in by the Supreme Court of Alabama in *Joseph Land Co., Inc. v. Gresham*, 603 So. 2d 923, 926 (Ala. 1992) that a party employing an independent contractor "is generally not liable for the torts of the independent contractor committed in the performance of the work the contractor was engaged to perform." General Shale acknowledges two "extremely rare" exceptions to this general rule: 1) situations where the party hiring the contractor has a non-

---

[5] This section summarizes the arguments made by the parties and does not necessarily reflect the conclusions reached by the court.

[6] General Shale especially argues that any negligent entrustment claim was disposed of in the June 29, 2006 Memorandum Opinion and Order granting partial summary judgment, but alternatively submits argument on the subject, which the court will summarize herein.

[7] Regardless, this court will revisit the negligent hiring/entrustment claim(s), which Plaintiffs acknowledge are the only remaining claim(s).

delegable duty, or 2) situations where the activity involved is intrinsically or inherently dangerous – exceptions that Supreme Court of Alabama deemed inapposite to this case. General Shale notes that there is something of a dearth of Alabama caselaw regarding negligent hiring of an independent contractor,[8] and that it could locate no precedent for an Alabama court finding an employer liable under such a theory. To do so here, General Shale argues, would require this court to traverse "uncharted waters."

      B.      There is no evidence that General Shale failed to properly investigate D.G. Trucking's Competence.

General Shale submits that the Alabama courts have never imposed a duty for a party[9] to investigate an independent contractor's competence before engaging his/her service, but that even if there were such a duty, General Shale had sufficient knowledge of its independent contractor to determine its competency. It notes this court's previous observation that, for approximately 15 years prior to the accident in question, General Shale had employed D.G. Trucking to haul kiln cars, without incident, and that D.G. Trucking's driver, John Peace, held valid drivers' and commercial drivers' licenses, with only a "few driving violations."[10] General Shale also notes that there is no evidence that D.G. Trucking failed to comply with federal

---

[8] General Shale cites *McGinnis v. Jim Walter Homes, Inc.*, 800 So. 2d 140 (Ala. 2001) as "essentially the extent of the law in Alabama" on this subject. In *McGinnis*, the Supreme Court of Alabama affirmed the trial court's grant of summary judgment, noting that the plaintiff there had failed to present evidence showing that the independent contractor has a history of negligence in the work that the defendant hired it to do.

[9] General Shale notes that Plaintiffs rely on the Restatement (Second) of Torts § 411 to impute such a duty onto General Shale, but that Alabama courts have never expressly adopted that section of the Restatement.

[10] General Shale cites the deposition of Mr. Bob Keyes, a General Shale manager, which tends to confirm this characterization the General Shale – D.G. Trucking business relationship.

regulatory requirements in hiring and training its commercial drivers.  *Cf.* 49 C.F.R. § 390, *et seq*.

General Shale further argues that the hauling of kiln cars – as the Supreme Court of Alabama noted in its answer to this court's certified questions – do not constitute an "inherently dangerous" activity.  It avers that load was merely oversized, not illegal, and as such did not impute a duty on General Shale's part to engage in heightened scrutiny of D.G. Trucking.[11]

C.  There is no evidence that the independent contractor, D.G. Trucking, was incompetent.

General Shale further argues that Plaintiffs have submitted no evidence tending to show that D.G. Trucking was incompetent.  It characterizes much of Plaintiff's "evidence," particularly the testimony of its expert, Whitney Morgan, as being primarily and/or exclusively based on events or data that were not available until after the accident in question – and, in some cases, that is gleaned from the events of the accident itself.  General Shale especially notes Mr. Morgan's deposition testimony that prior to the accident, General Shale would not have been privy to information tending to show that D.G. Trucking was a "substandard carrier."  Because Plaintiffs offer nothing more than post-hoc analysis, General Shale avers that there is no evidence that it should have been on notice that D.G. Trucking was incompetent, even if it was.[12]

---

[11] General Shale further notes the deposition testimony of Plaintiffs' expert, who stated his belief that General Shale was under no duty to conduct a pre-trip inspection, or annual vehicle inspections, of its independent contractor's equipment.

[12] General Shale also directs the court to its Motion to Strike, filed on November 10, 2005, that concerns a second affidavit by Mr. Morgan that was appended to Plaintiff Westbrook's response to General Shale's first Motion for Summary Judgment.  General Shale argues that this affidavit, which purportedly puts forth pre-accident evidence of D.G. Trucking's incompetence, was filed in violation of the court's scheduling order and is based on information that is undisputedly incomplete, unreliable, and inadmissible (e.g., hearsay and speculation).

II.     Plaintiffs Fike's and Doxtator's Response.[13]

Plaintiffs Fike and Doxtator (hereinafter collectively referred to as "Fike") argue that General Shale "negligently contracted with an incompetent independent contractor who used inadequate sub-standard equipment to haul an inherently dangerous load," therefore rendering any grant of summary judgment inappropriate.

  A. Although Alabama courts have not adopted the Restatement (Second) of Torts § 411, they have often referenced the Restatement, and many other jurisdictions have adopted § 411.

Fike notes that although the Alabama courts have not expressly adopted the Restatement (Second) of Torts § 411, the courts commonly cites sections of the Restatement in tort cases. *See McIsaac v. WZEW-FM Corp.*, 495 So. 2d 649 (Ala. 1986) (citing § 46 and noting that an earlier case had adopted that section); *Bell v. Chisom*, 421 So. 2d 1239 (Ala. 1982) (citing § 895D and noting that an earlier case had adopted that section); *Stone v. Smith, Kline & French Laboratories*, 447 So. 2d 1301, 1302 (Ala. 1984) (noting that § 402A is "virtually identical" to the Alabama extended manufacturers' liability doctrine); *Harper v. Regency Dev. Co.*, 399 So.

---

General Shale further argues, *inter alia*, that the affidavit should be stricken because it was untimely, having been filed after General Shale had taken Mr. Morgan's deposition, made its own expert available for deposition, and briefed its motion for summary judgment. General Shale additionally submits that allowance of the second Morgan affidavit would result in unfair prejudice to its case. Westbrook argues that the Motion to Strike itself is untimely, as it is essentially a reply to his response to General Shale's first summary judgment motion, and as such is subject to the deadline set out in the court's submission order for that motion – a deadline he claims was not satisfied. He further submits that Mr. Morgan's affidavit is proper because it is a direct rebuttal to General Shale's claim that Plaintiffs did not submit evidence that D.G. Trucking had a deficient safety rating according to the Federal Motor Carrier Safety Association "SafeStat" system.

  [13] Plaintiffs Fike and Doxtator expressly incorporate their earlier response, filed on October 31, 2005, to General Shale's first Motion for Summary Judgment.

2d 248 (Ala. 1981) (noting the previous adoption of §§ 519-524A); *Taylor v. Shoemaker*, 605 So. 2d 828 (Ala. 1992) (citing § 895D); *U.S.A. Oil, Inc. v. Smith*, 415 So. 2d 1098 (Ala. Civ. App. 1982) (citing §46); *Williams v. Tennessee River Pulp & Paper Co.*, 442 So. 2d 20, 23 (Ala. 1983) (citing § 416 while noting that no Alabama court has adopted this section, and refusing to reach the issue).

Fike further argues that other jurisdictions have found liability for negligent hiring of an independent contractor. In *L.B. Foster Co., Inc. v. Hurnblad*, 418 F.2d 727 (9th Cir. 1969), the court, citing § 411, held that an employer was liable where its independent contractor, which was hauling a load of steel at the employer's behest, collided with and injured the plaintiff. The court reached a similar conclusion in *Schramm v. Foster*, 341 F. Supp. 2d 536 (D. Md. 2004), holding that there is a duty to exercise reasonable care in the selection of carriers.

Fike also cites 41 Am. Jur. 2nd *Independent Contractors* §37,[14] and argues that although the transportation of kiln cars is highly dangerous unless done properly, General Shale still did not inquire as to D.G. Trucking's skill for doing so. Fike further contends that General Shale, relying solely on its 15 year business relationship with D.G. trucking, did not inquire into vehicle safety, driver competence, "nor the fact that the load was illegal, hazardous and inherently dangerous." *See Looker v. Gulf Coast Fair*, 81 So. 832 (Ala. 1919) (holding that an employer

---

[14] Fike directs the court to the following excerpt: "An exception to the general rule of nonliability of an employer for the negligent acts of an independent contractor is recognized where the employer has failed to exercise due care to secure a competent contractor for the work, and if lack of such care is found, the employer may be liable for the negligent acts of the contractor. For the employer to be held liable on the ground of having employed an incompetent or otherwise unsuitable contractor, it must be demonstrated that the employer either knew or by the exercise of reasonable care might have ascertained, that the contractor was not properly qualified to undertake the work."

should replace an independent contractor if circumstances arise that cause the employer to question the independent contractor's competence), *and Hudgens v. Cook Industries, Inc.*, 521 P.2d 813 (OK 1973). Fike claims that, 4 months prior to the accident, D.G. Trucking had a "SafeStat" score in the bottom 20% of all carriers, a fact that General Shale had constructive knowledge of since it had not previously retained D.G. Trucking to transport kiln cars, warranting a routine inquiry into their safety status.

Based on the foregoing authority and facts, Fike argues that this court should recognize that there is a genuine question of material fact that forestalls entry of judgment as a matter of law in General Shale's favor.

      B.      The hauling of kiln cars constitutes inherently/intrinsically dangerous activity or abnormally dangerous work.

Fike cites the Restatement (Second) of Torts §416, which states that the exception to the general rule of non-liability for the acts of an independent contractor comes into play when the activity to be performed creates a peculiar risk of physical harm to others. Fike argues that this comes into play in the instant case because the 6 kiln cars (over 81,000 pounds and 17.8 feet wide) overloaded the trailer, exceeding the width allowed by law and constituting an inherently dangerous activity. Fike points out that General Shale's expert witness, Terry E. Morgan, testified that putting this load on a highway only 24 feet wide was "inherently dangerous." Regarding General Shale's argument that the Supreme Court of Alabama already found that the load in question was not inherently dangerous, eliminating any need for this court to entertain further argument on this question, Fike cites a litany of factors that it claims the Supreme Court

of Alabama was not provided.[15]

III.     Plaintiff Westbrook's Response.

    A.     Liability for negligent hiring.

Plaintiff Westbrook ("Westbrook") argues that, contrary to General Shales' argument, Alabama law does recognize the tort of negligent hiring. *See Sloss-Sheffield Steel & Iron Co. v. Bibb*, 51 So. 345 (Ala. 1910).[16] He argues that General Shale hired an independent contractor whose safety rating was in the bottom 20% to haul an "extremely wide load," and retained a driver with a "marginal at best" driving record to haul the load on a truck with numerous, obvious violations. Westbrook also claims that General Shale did not train its employees who were directly involved with motor carrier operations, preventing them from recognizing the violations allegedly committed by the independent contractor and its driver. He therefore claims that General Shale is not entitled to judgment of a matter of law because "[a] genuine issue of fact exists as to whether, General Shale made a reasonable inquiry regarding the hiring and use of

---

[15] Fike argues, *inter alia*, that the Supreme Court of Alabama was not apprised of the following: General Shale's employees loaded the kiln cars; General Shale considered shipping the cars by rail, but the load was too large to fit through a railroad tunnel along the route; General Shale did not ensure that D.G. Tucking had the appropriate permits for transporting this oversized load; the wide load permit of Peace and D.G. Trucking had expired; Peace had speeding, failure to appear, traffic school, and multiple drivers' license suspensions on his record; the D.G. Trucking vehicle and trailer lacked annual inspection stickers and a current license tag; the load was double the width permitted without the procurement of permits; and that a federal safety evaluation (dated March 24, 2003, 4 months prior to the accident) found that D.G. Trucking had  resulting in a deficient rating in all areas.

[16] Westbrook argues that the *Bibb* holding is the functional equivalent to  Restatement § 411.  He further cites voluminous Alabama caselaw to prove that the Supreme Court of Alabama recognizes the tort of negligent hiring.

D.G. Trucking and its driver John Peace that precludes summary judgment."[17]

    B.    Negligent entrustment.

Westbrook argues that summary judgment on the negligent entrustment claim is inappropriate due to the "deficient safety record of D.G. Trucking the condition of the rig and the control General Shale had over the load at issue (the steel was manufactured and loaded by them) genuine issues of fact exists [sic] as to General Shales [sic] entrustment to D.G. Trucking of the load that struck the plaintiffs." He argues that these facts satisfy the elements for the tort[18] under Alabama law.

IV.    General Shale's Reply.

    A.    The issue of whether the kiln cars were intrinsically/inherently dangerous is not before this court.

General Shale reiterates that Plaintiffs' characterization of the kiln cars as intrinsically/inherently dangerous has already been twice rejected – first by this court in its Memorandum Opinion of June 29, 2006, and later by the Supreme Court of Alabama in its response to the certified questions in this cause.

    B.    Liability for the negligence of an independent contractor.

General Shale characterizes Plaintiffs' argument that it is liable for its independent contractor's negligence as solely reliant on nonbinding and nonpersuasive decisions from other

---

[17] Like Plaintiffs Fike and Doxtator, Westbrook cites the cases of *Hudgens, Hurnblad, Looker*, and *Schramm*, and 41 Am. Jur. 2nd *Independent Contractors* §37, as legal support for his arguments. The court will not describe those arguments with particularity here because they do not substantially differ from those put forth by Plaintiffs File and Doxtator based on the same authority.

[18] Those elements are set forth at part IV(C) of this Memorandum Opinion.

jurisdictions. It reiterates that the Alabama courts have never adopted Restatement § 411, and notes that all of Plaintiff Westbrook's cases purportedly finding employers liable for negligent hiring actually pertain to hiring employees, not independent contractors.[19] General Shale attempts to distinguish Plaintiffs' extra-jurisdictional authority as follows:

- *Hurnblad*, 418 F.2d 727 – unlike the independent contractor in that case, D.G. Trucking was not a "fly by night operation" (for example, the company in that case had no office, merely a telephone and a post office box, and was not licensed by the Interstate Commerce Commission to haul freight on the interstate), but in fact was a reputable, licensed company that General Shale had done business with for approximately 15 years prior to the accident in question. Also unlike the independent contractor in *Hurnblad*, there was no evidence that D.G. Trucking had a bad reputation in the community.

- *Hudgens*, 521 P.2d 813 – in the instant case, unlike the independent contractor in *Hudgens*, there is no evidence that D.G. Trucking hired drivers with prior arrests or who had a history of driving while intoxicated. No evidence that, prior to this accident, D.G. Trucking failed to comply with federal safety regulations or that its equipment was "grossly defective" or unsafe on the public highways.

- *Schramm*, 341 F. Supp. 2d 536 – General Shale was not as consistently engaged in the business it contracted D.G. Trucking to perform as was its counterpart in *Schramm*. Further, unlike in that case, D.G. Trucking was not in violation of a

---

[19] *See Bibb*, 51 So. 2d at 347 (finding that the purportedly negligent individual "was employed and in the service of the defendant"), *and Poplin*, 286 F. Supp. 2d at 1318-19 (finding that the individual responsible for the accident was the defendant's employee).

contractual provision requiring it to maintain a certain rating from the United States Department of Transportation, and General Shale did not maintain insurance to cover D.G. Trucking (as an independent contractor, D.G. Trucking carried its own insurance).

Additionally, General Shale maintains that should the court wish to inquire outside the jurisdiction for guidance on this issue, the weight of authority favors its position. For example: *Stone v. Pinkerton Farms, Inc.*, 741 F.2d 941 (7th Cir. 1984) (employer not liable for independent contractor's negligence where its driver had 6 speeding tickets at the time of his hiring, no insurance, and no permit to haul the load he was employed to haul, but had a valid license and received a good recommendation from his prior employer, for whom he had driven without incident); *Wilson v. Good Humor Corp.*, 757 F.2d 1293 (D.C. Cir. 1985) (even though employer apparently did not exercise reasonable care in hiring its independent contractor, employer is still entitled to judgment as a matter of law due to plaintiff's failure to show a causal link between employer's incompetence and the accident at hand); *Reeves v. Kmart Corp.*, 582 N.W. 2d 841 (Mich. App. 1998) (no liability for employer despite its agents openly commenting on the "dangerous" nature of the vehicle, the post-accident inspection report noting that the lack of maintenance on the vehicle reflected a "disregard for the laws of safe trucking operation or contempt for the motoring public").

    C.    Plaintiffs' negligent entrustment claim is not before the court, and even if it were, General Shale would be entitled to summary judgment.

General Shale's position is that any such claim was dismissed by this court's June 29, 2006 Order and accompanying Memorandum Opinion, which stated that the court found "no

basis for any other direct claims against General Shale," leaving only the questions of liability for the negligence of an independent contractor.

If the negligent entrustment claim survived the partial summary judgment it was granted on June 29, 2006, General Shale argues that the claim nevertheless fails. General Shale lists the elements of negligent entrustment as 1) an entrustment 2) to an incompetent 3) with knowledge that he is an incompetent 4) proximate cause and 5) damages. *Halford v. Alamo Rent-A-Car, LLC,* 921 So. 2d 409, 412 (Ala. 2005). General Shale claims that it is entitled to judgment as a matter of law on this claim because there is no evidence of entrustment (the equipment all belonged to D.G. Trucking, whereas General Shale merely loaded the truck); no evidence to establish that the driver, Peace, was incompetent or that General Shale so considered him; and no evidence of proximate cause, as this court has already found in its June 29, 2006 Memorandum Opinion that the accident at issue was caused "by D.G. Trucking and its driver either because of improper maintenance of the truck, or improper operation of the truck or both."[20]

### CONCLUSIONS OF THE COURT

The following language from the Supreme Court of Alabama's opinion continues to be pertinent:

> It is undisputed that the brakes on Peace's truck failed and that an inspection of Peace's truck after the accident revealed numerous violations of the applicable Federal Department of Transportation regulations, including a failure to properly adjust the brakes. The fact that Peace was hauling an oversized load played no role in the accident, and there is no evidence to indicate that this accident would have occurred if Peace or [D.G. Trucking] had maintained

---

[20] General Shale further notes this court's finding that the negligence of D.G. Trucking and Peace constituted an intervening act of negligence even as to any arguable negligence of General Shale.

> the brakes on the tractor-trailer, as they had a duty to do. Thus, the hauling of this heavy load does not meet the definition of an "inherently dangerous" activity because the major risk of harm from the oversized load could have been alleviated if Peace and [D.G. Trucking] had used reasonable care.

The court rejects the Plaintiffs' attempt to revisit the holdings of the Supreme Court of Alabama.

The court further concludes that General Shale's motion should be granted as to the negligent hiring/entrustment claims. General Shale was not on notice of the brake problem. Further, it was not on notice of any alleged incompetence of Peace. It is apparent that the accident unfortunately resulted from the combination of a traffic jam and bad brakes. Plaintiffs' claims against General Shale are otherwise conclusory and not well-founded.

The motion for summary judgment is due to be **GRANTED**. A corresponding order is filed contemporaneously herewith.

**DONE** this 1st day of May, 2007.

_____
**ROBERT B. PROPST**
**SENIOR UNITED STATES DISTRICT JUDGE**